NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MIKE NEWMAN, | : |
|  | : |
| Petitioner, | : Civil Action No. 16-3396-BRM |
|  | : |
| v. | : **OPINION** |
|  | : |
| THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, et al., | : |
|  | : |
| Respondents. | : |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Petition for a Writ of Habeas Corpus (ECF No. 3) pursuant to 28 U.S.C. § 2254, brought by Petitioner Mike Newman ("Petitioner"), challenging a conviction and sentence imposed by the State of New Jersey for robbery, attempted murder, and related crimes. Respondents filed an Answer addressing the merits of Petitioner's claim, (ECF No. 7), and Petitioner filed a reply, (ECF No. 10). For the reasons set forth below, the Petition is DENIED.

**I.    FACTUAL BACKGROUND**

For the purposes of this Opinion, the Court relies on the following findings of fact by the state appellate court ("appellate court") on direct appeal, which Petitioner has offered no evidence to dispute:

> Just after midnight on August 3, 2008, Samuel Epright left his home in Seabrook, intending to drive to the local WaWa for coffee and to refuel his car. As he reached for the handle of his car, a person holding a shotgun told Epright "Give me your money." When Epright replied he didn't have any money, the gunman asked, "Do you think I'm playing?" Epright was then struck in the back of his head and fell. When he got back up, the gunman again asked if Epright thought he was playing. When Epright responded "No, I don't think you're playing," the gunman fired a shot into Epright's left thigh. Epright fell to the ground and yelled for

someone to call 911 and an ambulance. The gunman fled. Epright's daughter and neighbors responded and the police were called. Epright provided a general description of his assailant but gave no indication that he knew him. Medical personnel arrived and airlifted Epright to Cooper Hospital.

One of the responding officers, State Trooper John Delsordo, interviewed neighbors and members of defendant's family. This investigation provided substantial evidence linking defendant to the shooting.

Defendant's cousin, Tina Rennie, who lived two houses from Epright on the same street, had dinner with defendant in her home a few hours before the shooting. Rennie was awakened that evening by her dogs barking and someone trying to get in her back door. When Delsordo interviewed her the following morning, Rennie told him of this incident and gave him permission to search her back yard. Delsordo found a shotgun which was covered by a blanket in a shed behind Rennie's home about thirty feet from where Epright was shot. Rennie had never seen the gun before and did not know how it got into her shed.

Rennie's son, Rahim Newman, told Delsordo he had seen defendant in his mother's backyard a few hours before the shooting. Defendant was wearing a hunting belt with shotgun shells attached.

Bobbie-Ann Young, Epright's former girlfriend, was stopped by police investigating the shooting as she was driving home. She told them she had seen a man running from the direction of Epright's home toward her neighborhood. About twenty minutes after Young returned home, defendant knocked on her door and asked to come in. Young refused.

Young also told police that defendant had come to her home a few weeks earlier on a bicycle wearing a vest with bullets stuck to it. Young saw a tarp on the bike and after feeling it realized it was a shotgun. When she asked defendant what he was doing, he responded, "Nobody's going to hurt me any more [sic]."

Defendant's father Michael Santiago told police that he spoke with defendant the morning after the shooting and defendant said he was in trouble because he shot someone. Defendant made a similar admission to his cousin Terry Smith-Bey, telling him that he shot a white guy in the leg and they knew each other.

Based on this evidence, defendant was arrested on August 4, 2008, and charged with Epright's shooting. Epright spent twelve days in the hospital and underwent two surgeries on his leg. On August 6, 2008, Delsordo interviewed Epright in the hospital. He again was able to give a general description of his assailant and the type of gun he used, a single barrel shotgun.

On August 18, 2008, after his release from the hospital, Epright was again interviewed by Delsordo and identified defendant, by name, as the person who shot

2

him. Epright said he could identify defendant and DelSordo showed him a photo of Newman obtained from DMV. Epright looked at the photo for several minutes because he "wanted to be sure," then positively identified Newman as the shooter.

*State v. Newman*, No. A-2947-10T2, slip op. 3-5 (N.J. Super. Ct. App. Div. Oct. 10, 2012) (ECF No. 7-20) ("*Newman I*").

Petitioner was convicted of the aforementioned offenses in a jury trial. (ECF No. 3 at 3.)

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, district courts "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When a claim has been adjudicated on the merits in state court proceedings, a writ for habeas corpus shall not issue unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012).

A state-court decision involves an "unreasonable application" of clearly established federal law if the state court: (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in

3

light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to, state court decisions. *See Felkner v. Jackson*, 562 U.S. 594, 598 (2011); *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).

### III. DECISION

The Court construes the Petition as raising five grounds for relief: (1) the trial court erred in denying Petitioner's motion to suppress Epright's identification of him using the DMV photo; (2) the trial court erred by allowing evidence of prior bad acts to be introduced at trial; (3) Petitioner's sentence was manifestly excessive; (4) Petitioner was provided ineffective assistance of trial counsel; and (5) the post-conviction relief court ("PCR court") erred in denying him an evidentiary hearing. (ECF No. 3.) The Petition contains almost no factual allegations to support Petitioner's claims. Nevertheless, the claims before this Court are the exact claims Petitioner raised on his direct appeal and in his PCR proceedings. Therefore, the Court finds Petitioner is raising the same claims and relying on the same factual allegations he asserted in state court.[1]

---

[1] To the extent Petitioner raises any claim in the instant Petition that was not raised in state court, he would be barred from doing so for the failure to exhaust the remedies available in state court. *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]").

### A. Photo Identification

Petitioner asserts the trial court erred in denying his motion to suppress Epright's identification of him using the DMV photo. (ECF No. 3 at 7.) The appellate court found "nothing to suggest that the identification procedure employed here was unduly suggestive. Nor is there any evidence to indicate that the identification was not actually that of the eyewitness, but was imposed upon him so that a substantial likelihood of irreparable misidentification can be said to exist." *Newman I* at 9 (citation omitted). The Court agrees.

At the motion to suppress hearing, the trial court made these additional factual findings:

> On August 18, 2008, after Epright's release from the hospital, he was interviewed by DelSordo and "volunteered" that he knew who shot him and identified defendant by name unprompted by the police. DelSordo was prepared to show Epright a photo array but thought that was unnecessary once defendant was identified by name. DelSordo then showed Epright a single photograph of defendant and asked, "Is this the person that shot you?" . . . Epright then identified the photo as Mike Newman, the person who shot him.

*Id.* at 8. The trial court found that the phrasing of Delsordo's question was not suggestive in any way, and that Epright's identification after viewing the photo was simply a confirmation of an identification of someone Epright already knew and not impermissibly suggestive, which the appellate court affirmed. *Id.* at 8-9.

Here, the state courts, and both Petitioner and Respondents, construed this claim as one dealing with photo array identification as articulated by the Supreme Court in *Perry v. New Hampshire*, 565 U.S. 228, 237-38 (2012). However, this is not such a claim, because according to the record, Epright made a positive identification of Petitioner, by name, *before* Delsordo showed him any photograph. In *Burgos-Cintron v. Nyekan*, 510 F. App'x 157, 161 (3d Cir. 2013), the Third Circuit explained "guidelines for photo arrays intended to ensure the accuracy of photo identifications . . . are [not] intended to deal with a situation in which the person making the

5

identification *previously* had identified a particular individual as the perpetrator of an offense and he is shown a single photograph merely to confirm his earlier identification." (emphasis added). *Burgos-Cintron* stands for the proposition that a photo identification cannot be "suggestive" if the witness has *already* identified the perpetrator. *Id.* Indeed, the "suggestion" that led Delsordo to show Epright the DMV photo, in essence, came from Epright himself. As Delsordo testified, he was prepare to conduct a photo array identification with Epright, but chose to forgo it after Epright's positive identification of Petitioner—Delsordo would have had no reason to do so if not for the unprompted identification. *See also Wiggins v. Greiner*, 132 F. App'x 861, 865-66 (2d Cir. 2005) (finding a witness's testimony at trial was not tainted by her photo identification of the defendant from a single photograph because other independent evidence of identification by the same witness rendered her testimony reliable). As such, the appellate court's ultimate holding—that the photo identification was not suggestive—was a reasonable application of established federal law, based on a reasonable determination of the facts, and relief on this ground is denied.

### B. Prior Bad Acts

Petitioner argues the trial court violated his constitutional rights when it allowed the admission of certain evidence relating to his prior bad acts into trial. (ECF No. 3 at 7-8.) The Court rejects this argument, because based on the record, there was no constitutional violation by the trial court.

Petitioner's claim concerns testimonies of two witnesses at trial. The first was testimony by Epright, during cross-examination by Petitioner's counsel, which alluded to a prior incident of theft by Petitioner that the trial court had already barred the State from introducing. *Newman I* at 10-11. The second was testimony from another witness regarding Petitioner's prior record of incarceration, solicited again by defense counsel over the prosecution's objection, which the trial

6

court immediately gave a limiting instruction to the jury to disregard. *Id.* at 12-15. The appellate court found the inclusion of these testimonies at trial was not reversible error because "we must bear in mind the fact that the damaging evidence that we have cited was introduced as a result of defense counsel's insistence . . . ." *Id.* at 15. The appellate court held that neither "Epright's isolated comment" nor "the passing reference to defendant's incarceration without any detail or elaboration" constituted reversible error. *Id.* at 12, 16.

The facts presented above do not raise a constitutional issue. The kinds of "infractions that violate 'fundamental fairness' [are defined] very narrowly based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Medina v. California*, 505 U.S. 437, 443 (1992). The Bill of Rights speaks to "many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order." *Id.* "Except in cases involving a violation of a specific constitutional provision such as the Confrontation Clause, this Court may not reverse a state trial judge's action in the admission of evidence unless the evidentiary ruling so infuses the trial with unfairness as to deny due process of law." *Riggins v. Nevada*, 504 U.S. 127, 147 (1992) (citations omitted).

Here, Petitioner does not specifically identify what constitutional provision the trial court violated. Indeed, neither the trial court nor the prosecution caused the alleged violations—Petitioner's own counsel did. As such, the Court cannot determine exactly what constitutional guarantee Petitioner believes he was denied through the actions of the trial court. To the extent Petitioner is making a general due process claim, the Court cannot reverse the trial court unless its actions so infused the trial with unfairness, which the record does not support, as the trial court

explicitly forbade introduction of evidence regarding the prior theft before trial, and gave an immediate limiting instruction regarding the prior incarceration testimony. There is simply nothing in the record to indicate the trial court violated Petitioner's constitutional rights. Petitioner may be upset at his own counsel, but that is not a trial court error. Therefore, the Court finds the appellate court's holding on this claim to be a reasonable application of established federal law, based on a reasonable determination of the facts, and relief is denied on this ground.

### C. Excessive Sentence

Petitioner asserts the sentence he received was manifestly excessive. (ECF No. 3 at 8.) However, he cites to no constitutional provision or federal law to support his claim, and the appellate court on direct appeal analyzed this claim entirely on state law grounds. *See Newman I* at 17-19. "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). "[F]ederal habeas corpus relief does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). Therefore, Petitioner's claims based on state law are denied.

To the extent Petitioner's claim is based on the Eighth Amendment, prohibition against cruel and unusual punishment, he cites no case law, and the Court finds no case law, where a non-capital sentence of any length, imposed on an adult defendant who has been convicted of a felony, has ever been struck down as unconstitutional by any federal court. As the Supreme Court has held, "[s]evere, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history." *Harmelin v. Michigan*, 501 U.S. 957, 994-95 (1991). Petitioner has provided no support in claiming his forty-

year sentence, imposed for a conviction of attempted murder, robbery and other crimes, was unconstitutional. Accordingly, relief is denied on this ground.

**D. Ineffective Assistance of Counsel**

Petitioner alleges numerous defects in trial counsel's representation, asserting he was ineffective because he failed to obtain expert reports, failed to challenge state evidence, failed to subpoena certain witnesses, failed to request dismissal of two jurors, failed to adequately confer with Petitioner before trial, and failed to request a cross-racial instruction to the jury. (ECF No. 3 at 8-10.)

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. Under the familiar standard, this means the right to the effective assistance of counsel, and counsel can deprive a defendant of that right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must determine whether, in light of all the circumstances, the identified errors fell "below an objective standard of reasonableness." *Hinton v. Alabama*, 134 S.Ct. 1081, 1083 (2014) (per curiam). Second, the defendant must show he suffered prejudice due to the alleged ineffective assistance. However, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693. To establish prejudice, the

9

defendant must show that "there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission." *Hinton*, 134 S.Ct. at 1083.

Here, the PCR court rejected Petitioner's claim, finding he failed to establish either prong of the *Strickland* test, because he did not substantiate his claim with evidence to show counsel's strategic decisions during the criminal proceeding were objectively unreasonable, and he did not show how the result of the trial would have been different. (PCR Trial Ct. Op. (ECF No. 7-31) at 10.) The appellate court "affirm[ed] the denial of PCR substantially for the reasons stated by [PCR court]." *State v. Newman*, No. A-5222-13T2, slip op. 7 (N.J. Super. Ct. App. Div. Nov. 4, 2015) (ECF No. 7-35) ("*Newman II*"). It also held "[d]efendant has not shown a reasonable probability that the result here would have been different . . . ." *Id.* at 9.

Because the Petition is devoid of factual allegations to support Petitioner's claim, the Court conducted a review of Petitioner's briefs in both the PCR court and appellate proceedings to ascertain the exact contours of his claim. (*See* ECF Nos. 7-28, -29, -32 & -33.) Having reviewed all of his filings, the Court finds the appellate court's decision was a reasonable application of federal law, based on reasonable application of the facts. Although Petitioner lists a number of things trial counsel could have done differently, that is true of almost every criminal trial. The Constitution does not require trial counsel to be perfect. Petitioner's trial counsel was required to provide objectively reasonable representation, and based on the record, the Court cannot find the appellate court's holding, that counsel was not ineffective, was unreasonable. The Supreme Court has stated:

> When the claim at issue is one for ineffective assistance of counsel, . . . AEDPA review is "doubly deferential," because counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. In such circumstances, federal courts are to afford both the state court and the defense attorney the benefit of the doubt.

*Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citations omitted).

Petitioner is attacking the sufficiency of the State's case by attempting to raise reasonable doubt, but the time for that strategy has passed. On a federal habeas petition, the Court is limited to reviewing the case to see if any errors of constitutional proportion had occurred, and must give deference to the state court's findings. This Court finds the appellate court correctly identified and applied the applicable federal law under *Strickland*, and found that counsel was not ineffective and that the result of the trial would not have changed. In an application for a writ of habeas corpus submitted by a person in custody pursuant to the judgment of a State court, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has not presented clear and convincing evidence to rebut the presumption of correctness—indeed, he relies exclusively on the record already reviewed by the very state court that denied his PCR to articulate his federal habeas claims here. As such, the Court finds the appellate court's holding on this ground was a reasonable application of established federal law, based on a reasonable determination of the facts, and relief on this ground is denied.

**E. Evidentiary Hearing on PCR**

Finally, Petitioner asserts the PCR trial court erred in denying him an evidentiary hearing. (ECF No. 3 at 10.) However, that is not a valid claim on federal habeas review. "[T]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation." *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) (emphasis in the original). In other words, "alleged errors in collateral proceedings . . . are not a proper basis for habeas relief from the original conviction. It is the

original trial that is the 'main event' for habeas purposes." *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004). Courts in this district have held the lack of an evidentiary hearing during a state PCR proceeding is not a cognizable federal habeas claim. *Davis v. New Jersey*, No. 12–5748, 2014 WL 2615657, at *17 (D.N.J. June 12, 2014); *Vreeland v. Warren*, No. 11–5239, 2013 WL 1867043, at *4 n.2 (D.N.J. May 2, 2013). Accordingly, relief on this ground is denied.

### F. Certificate of Appealability

Federal law provides that an appeal may not be taken to the court of appeals from a final order in a § 2254 proceeding unless a judge issues a COA on the ground that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Slack v. McDaniel*, 529 U.S. 473, 474 (2000), the United States Supreme Court held:

> [w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue.

## IV. CONCLUSION

For the reasons set forth above, the Petition is **DENIED**, and a certificate of appealability is **DENIED**.

Date: May 19, 2017                                                     */s/ Brian R. Martinotti*
                                                                                   **HON. BRIAN R. MARTINOTTI**
                                                                                   **UNITED STATES DISTRICT JUDGE**